Mr. Chief Justice Negrón Fernández took no part in the decision of this case.

JUAN FERNÁNDEZ, JR., substituted by CARMEN BETANCOURT WIDOW OF FERNÁNDEZ AND SONS, ETC., Plaintiffs and Appellants, v. UNIÓN DE TRABAJADORES DE MUELLES ILA 1740 (UTM), AFL–CIO, Defendant and Appellee.

No. R-68-246.    Decided January 14, 1972.

*David F. Barreto* for appellants. *Charles H. Juliá* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Juan Fernández, Jr., filed a complaint against the Unión de Trabajadores de Muelles, ILA 1740 (UTM) AFL–CIO,

claiming extra hours worked during the weekdays as well as during days of rest and holidays in the period comprised between June 29, 1963 and June 27, 1966. The claim is for 5,905 extra hours amounting to $8,634.38 plus an amount as penalty for a total of $17,268.76 plus costs and attorney's fees.

The defendant alleged as affirmative defense that during the period specified in the complaint appellant worked for it in his capacity as executive, officer, and organizer of the defendant.

Relying on this defense, the trial court rendered judgment dismissing the complaint, after making the following findings of fact:

"1—Complainant Juan Fernández, Jr., was elected First Member of the Board of Directors of the defendant, Unión de Trabajadores de Muelles, ILA 1740 (UTM) AFL–CIO, and held this position from June 29, 1963 to June 25, 1966, when he ceased as such.

"2—The Constitution and Regulations of the defendant Union, regarding the duties of the plaintiff, provide, insofar as pertinent, that the Board of Directors shall consist of eleven officials, to wit, President, Vice-President, Financial Secretary, Recording Secretary, Treasurer, Guide, Marshal, and 4 Members.

"3—Section 8 of Art. No. 7 of the Union's Constitution provides, as to the duties of the members, the following:

" 'The Members shall be four and shall have the following duties: Shall perform all the functions vested in them, they shall see to it that all the administrative provisions and provisions of this Constitution be complied with, shall perform the agreements of the Board of Directors and of the membership, shall investigate quarterly, from the 20th to the 30th of each trimester, the Union's finances and shall submit a report of their work to the membership.'

"4—Among the duties to be performed by the plaintiff were the tasks of answering the telephone of the Union's offices, prepare notices of the arrival of ships, write on the bulletin board the date and hour of arrivals of ships and the necessary

crew ('gangs'), accompany the treasurer to the bank to take out the money for operations and change the payroll checks, look for the checks of the checkoff of the companies, receive the persons who visited the office, attend to the selection of the gangs at the docks, open and close the defendant's offices, investigate the complaints of the workers belonging to the union and attend to funeral details of the deceased workers or of their relatives.

"5—As member of the Board of Directors plaintiff received a salary of $20 and $30 as weekly allowance for expenses for his work from Monday to Friday. When he worked on Saturdays he was paid $10 more for expenses and when he worked on Sundays he was paid another $10 for the same item. The salaries of the officials were approved in the last instance by the Union's Assembly that ratified the agreements of the Board of Directors concerning this matter. The plaintiff, who was First Member, as well as the other Union officers did not punch cards nor were subject to time clocks. Because of his vicinity to the Union, the plaintiff was more united than any other of the members of the Board to the Union's office and carried out 85% of the work of that office.

"6—Even though the working hours fixed were from eight to twelve in the morning and from one thirty to four in the afternoon, Monday through Friday, and from eight to twelve in the morning on Saturdays, in fact the plaintiff spent more time than required working in the office as well as out of it by virtue of the official tasks assigned to him as member of the Board of Directors of the Union. In this particular we give credit to the plaintiff's evidence as to the extra hours he worked aside from the mentioned regular hours.

"7—As of the period covered by the complaint the plaintiff was enjoying already the Social Security Benefits and the portion of allowances for expenses and salaries which he received responded to an agreement with the Union, in order that the income received by the plaintiff would not curtail his Social Security Pension in accordance with the earnings that this Social Security System permits the beneficiaries to earn."

After having read the transcript of evidence we conclude that the foregoing findings are supported by the evidence and that they are not erroneous.

On November 30, 1962, this Court rendered its judgment in the case of *Medina* v. *Unión Obreros Cervecería Corona*, 86 P.R.R. 609 (1962). Interpreting the provisions of Act No. 379 of May 15, 1948, as amended until then, and specifically those about the definition of "employee", "occupation," and places where the Act would govern, we held in said case that under certain circumstances, a labor union may be considered as an employer for the purposes of the application of the above-mentioned Act and that when the president of a labor union is assigned duties which properly belong to an ordinary employee, and in the performance thereof he works in excess of eight hours a day, the Union, as an employer, is bound to pay him therefor at double rate.

At that time, the officers of the labor unions were not excluded from the provisions of Act No. 379, as the term "employee" was defined therein. However, in order to counteract the adverse impact that this decision could have on the finances of the labor unions, the Legislature amended § 19 of Act No. 379, by Act No. 11 of April 26, 1963, providing that:

"The word 'employee' shall not include executives, managers, administrators, professionals, *or labor union officials or organizers when they act as such.*" (Italics ours.)

The legislative history of this Act indicates that the Legislature had the purpose of excluding from the provisions of Act No. 379 the officials and organizers of labor unions in the same manner that it had already excluded traveling salesmen, peddlers, executives, administrators, and professionals under the view of the difficulty of supervising the working day in such groups.

In the report of the Labor Commission of the House of Representatives of April 4, 1963, the following is set forth:

"PURPOSES OF THE BILL

"Senate Bill No. 435 amends § 19 of Act No. 379 of May 15, 1948, in order to exempt from the definition of employee of said Act the labor union officials or organizers when they act as such. Thus the functionaries of the labor unions will be in the same situation as the traveling salesmen and peddlers, executives, administrators, managers, and professionals who at the present time are exempted from the definition of employee as it appears in § 19 of Act No. 379 of May 1948, as amended."

"HISTORY.—

"In the case of Francisco Medina Vega v. Unión Obreros Cervecería Corona, etc., R-62-128, decided by the Supreme Court of Puerto Rico on November 30, 1962, it is established that, under certain and particular circumstances, the relation between the President of a labor union and the latter is invested with the essential characteristics of the relation between employer and employee, and that in these cases, such functionary may be considered as an employee as such condition is defined in § 19 of Act No. 379 of May 15, 1948, for the purposes of the application of the provisions of this Act regarding working days.

"In approving Act No. 379 of May 15, 1948, as amended, a number of persons whose work is extremely difficult to supervise insofar as their working day is concerned, even though there exists the relation of employer and employee, were excluded from the definition of employee. Thus the law exempts traveling salesmen, peddlers, executives, managers, administrators, and professionals from the definition of employees. It only raises the fact of the difficulty to supervise and control the working day in such groups. In the case of an executive functionary of a union or of a syndical organizer the control and supervision of working day is impossible to fulfill and even to determine with precision. The interesting ethical alternative of being judge and a party in the same proceeding is raised. It is a well established fact that the enthusiasm, the dedication and conviction of a syndical leader may lead him to devote all his time to the duties of his position, beyond what is reasonably necessary and what the membership would require. Circumstances proper of group policy could affect the permanency of a leader in his position. What until that moment had not been raised, human nature being as it is, could then dramatically present itself in the form

of a claim for extra hours of workday of which the membership could not have control. If this type of litigation would prosper in court under the authority of the decision of the Supreme Court of Puerto Rico, the syndical movement will confront itself with a serious crisis. On the other hand it could be alleged that this type of litigation violates in an indirect manner the public policy in force that recognizes, stimulates, and protects syndical activity and organizations. In this point Act No. 513 of April 30, 1946, which exempts from seizure and execution the funds and possessions of labor unions is of particular relevance." (Page 13 Appellee's brief.)

In a similar sense the Labor Commission of the Senate of Puerto Rico expressed itself in its report of February 26, 1963.

In the discussion of the Senate Bill No. 435, which upon approval became Act No. 11 of April 1963, the President of the Labor Commission of said body expressed himself as follows:

"Mr. Carrasquillo: They are excluded insofar as claims are concerned from the Act that creates the Minimum Wage Board. These traveling salesmen are excluded because the time they work cannot be computed, because a traveling salesman or peddler, well, leaves sometimes at six in the morning, and returns at ten at night. If they are going to make a claim to their employer, for all that time, well, imagine how much that claim would amount to, and following this line of thought they are excluded, so that they cannot make any claims to their employers for that concept.

"The same, then, occurs with the Presidents of the Unions, union organizers who are working from early hours in the morning and then, well, finish working late; and the same the organizers. If all that time that they work were to be computed, well, then the unions of Puerto Rico would go bankrupt. And, then, it is proposed that these union organizers and directors be placed on the same condition of exclusion as the salesmen." (17-1 *Diario de Sesiones* 339 (1963).)

According to Art. VII of the Constitution and Regulations of the defendant Union, the members (4) had the following

duties: "perform all the commissions entrusted them, to see that all the administrative rules and provisions of this Constitution are complied with, and shall comply with the agreements of the Board of Directors and of the membership. They shall investigate quarterly, from the 20th to the 30th of each trimester, the Union's finances and submit a report of their work to the membership."

It appears from the record that a great part of the work performed by appellant is framed within his duties as member of the Board of Directors and that he voluntarily performed other additional tasks because of the closeness of his residence to the offices of the Union. In the budget of expenses and salaries recommended by the Board of Directors, of which plaintiff was a member, a salary of $50 weekly was approved for each official. According to the plaintiff the "financier" broke down his salary in the following manner: $20 weekly as salary and $30 weekly as allowance for expenses, and $10 as allowance for expenses on Saturdays and Sundays. The plaintiff was already receiving Social Security benefits. According to the testimony of the President of the Union, Mr. Pérez Roa, it was not possible to supervise the work rendered by the plaintiff.

By virtue of the foregoing we conclude that the plaintiff-appellant is not covered by Act No. 379 of 1948, as amended, and consequently that the trial court did not err in dismissing the complaint.

Judgment will be rendered accordingly.

Mr. Chief Justice Negrón Fernández took no part in the decision of this case.